1  STEVEN M. GOLDSOBEL (State Bar No. 166405)
2  LAW OFFICE OF STEVEN M. GOLDSOBEL
   1900 Avenue of the Stars, Suite 1800
3  Los Angeles, CA 90067
   Telephone: (310) 552-4848
4  Facsimile: (310) 552-9291
   steve@sgoldsobel.com

5  Attorney for Defendant
6  JEANNE M. ROWZEE

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAY 21 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                 SOUTHERN DIVISION

11  UNITED STATES OF AMERICA,        )  Case No.: SA 08-150-AG
                                     )
12              Plaintiff,           )  **DEFENDANT JEANNE ROWZEE'S**
                                     )  **SENTENCING MEMORANDUM**
13                                   )  **AND EXHIBITS IN SUPPORT**
14      vs.                          )  **THEREOF**
                                     )
15  JEANNE M. ROWZEE,                )
                                     )  ~~FILED UNDER SEAL PURSUANT~~
16                                   )  ~~TO LOCAL RULE 79-5.4~~
            Defendant.               )
17                                   )
                                     )  Date:      May 21, 2012
18                                   )  Time:      1:30 p.m.
19                                   )  Courtroom: 10D

20

21

22

23  2012 MAY 11  PM 3: 31
24  CLERK, U.S. DISTRICT COURT
    CENTRAL DIST. OF CALIF.
25  SANTA ANA
26  BY
27

28

LODGED

---

         **DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND**
                   **EXHIBITS IN SUPPORT THEREOF**

ORIGINAL

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 1

II.     MS. ROWZEE IS MENTALLY AND PHYSICALLY
        IMPAIRED ...................................................................... 2

III.    THE ADDITIONAL IMPACT OF MS. ROWZEE'S REMORSE ..... 6

IV.     SINCE MS. ROWZEE'S GUILTY PLEA SHE HAS
        ASSISTED VICTIMS IN THEIR RESTITUTION EFFORTS ........... 8

V.      THE GOVERNMENT'S SUBSTANTIAL ASSISTANCE
        MOTION IS INSUFFICIENT ............................................. 10

VI.     JEANNE ROWZEE HAS VOLUNTEERED HER TIME
        TO HELP OTHERS ........................................................ 10

VII.    THE VICTIMS CONTINUE TO SEARCH FOR ASSETS ............. 11

VIII.   MS. ROWZEE RESIGNED FROM THE BAR ............................. 13

IX.     THE ADVISORY SENTENCING GUIDELINES AND
        FURTHER RESPONSE TO PRESENTENCE REPORT ................. 13

        A.     The Advisory Sentencing Guidelines ......................... 13

        B.     The Court Should Find Loss Between $7 Million and $20 ..... 14

        C.     Ms. Rowzee and the Government Agree that Rowzee
               Was Neither a Leader Nor Organizer ........................ 17

        D.     Ms. Rowzee Should Not Receive a Two Level
               Increase for Abuse of Position of Trust .................... 19

ii

1

## **TABLE OF CONTENTS**

2

3

4    X.    FINE AND RESTITUTION ................................................................. 19

5         A.    Fine ............................................................................... 19

6

7         B.    Restitution ....................................................................... 19

8    XI    CONCLUSION ...................................................................... 20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND
EXHIBITS IN SUPPORT THEREOF**

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases:**

*United States v. Berger*, 587 F.3d 1038, 1043 (9th Cir. 2009) ...................... 16

**Federal Statutes:**

18 U.S.C. § 3553 ..............................................................................2, 20

U.S.S.G. § 1B1.3 ............................................................................. 16

U.S.S.G. § 2B1.1 ............................................................................. 15

U.S.S.G. § 5K1.1 ............................................................................. 10

DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND
EXHIBITS IN SUPPORT THEREOF

## I. **INTRODUCTION**

Jeanne Marie Rowzee, a mother of two, has accepted responsibility for participating in a fraud scheme that ended in December 2006, over six years ago. Since then, Ms. Rowzee's life has been a shambles and every day since then has been a stark reminder of the mistakes she made and the pain she has inflicted on others. The shame and remorse have been to such a degree that these events have caused Post Traumatic Stress Disorder, in addition to Ms. Rowzee's long-term depression and bipolar disorder.

Today, she has nothing and her only concerns have been the well-being of her children and doing what she can to make the victims - the people she hurt - whole. Since her guilty plea in June 2008, Ms. Rowzee has been on electronic monitoring and has had a curfew (a constant reminder of what happened and punishment in and of itself).

Importantly, when Ms. Rowzee was released from custody, this Court made clear to her that a significant factor it would consider when imposing sentence would be Ms. Rowzee's restitution efforts. Ms. Rowzee has taken the Court's guidance seriously. Ms. Rowzee assigned all of her assets to the victims, including assets she owned long before the scheme was ever conceived by James Halstead. Given that most of the invested funds went to James Halstead and Robert Harvey, who spent the money on lavish lifestyles and risky investments, these collection efforts have been challenging. Nonetheless, Ms. Rowzee has spent literally hundreds of hours working with counsel, including assisting in litigation and testifying against PJ Elliott, her former domestic partner who possessed certain of the assets available for recovery. As detailed below, Ms. Rowzee's efforts have resulted in recoveries to the victims.

1

Ms. Rowzee recognizes that a sentence of imprisonment is likely. However, based on Ms. Rowzee's cooperation as set forth in the government's Motion for a Downward Departure, because of her extraordinary assistance to the victims and profound remorse, Ms. Rowzee prays for leniency and requests a sentence which is less than the 70 months' imprisonment recommended by the government. ***Specifically, pursuant to 18 U.S.C. § 3553(a), Ms. Rowzee requests a sentence of 36 months***.

For the Court's information, Ms. Rowzee's father, Charles Rowzee, who is almost 89, will be attending Ms. Rowzee's sentencing. For obvious reasons, Ms. Rowzee's children will not be there. Ms. Rowzee, her father and several other family members and friends have written letters about Ms. Rowzee and her sincere remorse. We respectfully request that the Court consider them prior to sentencing so the Court has a complete picture of Ms. Rowzee which stands in sharp contrast to this chapter of her life. They are attached as "Exhibit A" to this memorandum. Also attached are letters from Peter Pfund, an attorney for some of the victims who has been active in recovery efforts, along with letters from three of the victims he represents, all of whom acknowledge that the recovery they have received to date would not have been possible without Ms. Rowzee's assistance. *See* Exhibit B.

## II.   MS. ROWZEE IS MENTALLY AND PHYSICALLY IMPAIRED

As recognized in Section 3553(a), Ms. Rowzee shares with the Court some important background about her mental and physical history.

For as long as she can remember, Ms. Rowzee has known that she was adopted as a five month old infant. Although she wanted to believe that her birth parents did the best they could, she could never shake the feelings of abandonment that came from knowing about her adoption. Every year around her birthday, these feelings of rejection and depression would grow more intense. Beginning in

2

around 1975 while she was in junior high school and throughout high school and college, Ms. Rowzee often saw school counselors that were licensed psychotherapists for her depression and was first diagnosed with severe depression at age 25.

> Joanne Rowzee, Jeanne's sister, writes:
>
> While I have always felt absolutely blessed and had no issues or doubts caused by being adopted, I learned in later years that Jeanne struggled with this for many years. While she loves our parents very much, she was troubled and confused that anyone would have chosen to put her up for adoption as a baby. She apparently has never made peace with that and always felt that she was abandoned by her birth parents.
>
> Jeanne has never achieved that inner peace and I think that manifests itself in many different ways. As accomplished as she was, I don't think she has really had confidence in her own essential self-worth.

As time went by, Ms. Rowzee's depression became more severe and in around 1980, after college, she continued to seek treatment for her depression. However, because she moved often between 1980 and 2000, she saw a number of therapists, but never one for a consistent period of time.

In approximately 2002, as her depression escalated and she felt an increased difficulty to cope with all the issues in her life, Ms. Rowzee felt she needed to seek treatment consistently and continuously and began seeing Gordon Globus, a Newport Beach, California-based psychiatrist. Although Ms. Rowzee had struggled with severe depression all her life, Dr. Globus was the first medical professional to diagnose her with **bipolar disorder**. At this time, Ms. Rowzee was prescribed a variety of anti-depression, anti-anxiety and bipolar disorder

3

medications.  Ms. Rowzee continues to take these medications on a daily/semi-daily basis.

Ms. Rowzee remained under the care and supervision of Dr. Globus until July 2008 when, pursuant to a court order, she began seeing a mental health professional arranged through Pretrial Services.  Ms. Rowzee was treated by Dr. John Dermajian once a month and also by a licensed psychotherapist Dorena Trouchon once a week.  Approximately a year ago, Ms. Rowzee was transferred to another psychiatrist, Dr. Elahe Sagart.  Drs. Dermajian and Sagart and Ms. Trouchon all have confirmed Dr. Globus' earlier diagnosis of bipolar disorder.

Due to her early childhood trauma of being abandoned, Ms. Rowzee always has trusted people too easily because she is eager to earn acceptance.  And once she has it, she is desperately fearful of losing it.  This need for acceptance and fear of abandonment is, in part, what led Ms. Rowzee to believe in James Halstead and Robert Harvey, who not only were trusted business associates but also her friends.  Ms. Rowzee did not come forward earlier, initially because she feared losing her friends and was in denial about the severity of the situation.  Eventually, the situation spiraled out of control and when she realized she was in over her head, she was scared and did not know what to do.

In 2006, when Ms. Rowzee gathered the strength and courage to come forward, she was worried sick about the investors and tried to find a way to unravel the mess she had helped create.  Each day since, Ms. Rowzee is overwhelmed with guilt and remorse over her involvement in the investment scheme called "PIPEs" (Private Investment in Public Equities) and feels terrible about how that devastated the lives of the investors.

Oftentimes, Ms. Rowzee's self-doubt and self-hatred over the pain she has caused to her family, herself and others is so overwhelming and debilitating that

4

she feels hopeless and that suicide is the only option. As a result, the mental health professionals who are treating Ms. Rowzee have come close to institutionalizing her for her own protection. Specifically, in the summer of 2011, Ms. Rowzee's had spiraled so downward that she was rarely sleeping and could not get out of bed and, at the request of her therapist, her father came out from the East Coast to take care of her. Her therapist, Dorena Trouchon, spoke to her every day. She also was seeing her psychiatrist, Dr. Sagart, more frequently. Ms. Rowzee's children are the only thing that has prevented her from taking her own life, because this is not something she can do to them and believes that once you become a parent, you give up the right to act so selfishly.

Ms. Rowzee's internist, Dr. J. Stephen Wikle, her psychiatrist, Dr. Sagart and her therapist, Ms. Trouchon, agree that she also suffers from post-traumatic stress disorder as a result of the aftermath of the PIPEs situation, including the civil and criminal suits. Ms. Rowzee has constant flashbacks to the PIPEs events and in the limited instances where she can sleep, she has nightmares about what happened. Many days, she is so paralyzed by what has happened that she cannot get out of bed. This is symptomatic of general avoidance she is exhibiting – lack of caring for basic things, detachment, emotional numbness and an inability to recall important life events.

In addition, and due in large part to her deteriorating emotional and mental health condition, Ms. Rowzee also suffers from a range of chronic physical ailments, including severe stomachaches and headaches, extreme weight fluctuations, kidney stones, adverse side effects from the psychotropic mediations, a thyroid condition and high cholesterol, for many of which she takes medication. She has difficulty sleeping, even with the help of prescribed medications.

As discussed below, Ms. Rowzee has done everything in her power to

5

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS IN SUPPORT THEREOF**

1  rectify the situation and provide restitution to the investors. However, Ms.
2  Rowzee's mental, psychological and physical health have declined significantly
3  and even her efforts to help and make things right for the victims/investors have
4  not relieved Ms. Rowzee of the constant guilt and anxiety for the pain and distress
5  she has caused. According to the medical professionals supervising her care, it is
6  doubtful that Ms. Rowzee will ever recover emotionally, mentally or
7  psychologically from the trauma associated with these events.

## III.   THE ADDITIONAL IMPACT OF MS. ROWZEE'S REMORSE AND HER EARLIER LIFE

The profound impact of Ms. Rowzee's participation in the PIPEs scheme is
not only measured by her mental instability but reflected by the friends and family
who have submitted letters of support and know her prior to 2006.

For example, Ann Rawding, Ms. Rowzee's friend of 25 years, writes:

The Jeanne I know is an intelligent, well-spoken, stylish and worldly
woman. She has seen the newest blockbuster movie (or at least did
prior to having children), knows the name of the book that is the latest
must read, can give you directions to the little Italian place with the
best gnocchi, is always impeccably dressed, and is up on all the latest
breaking world, local and sports news. Jeanne is very social and
comfortable conversing with everyone, and always has an interesting
story or tibit [sic] of information to share. In her professional life, it
was always evident that she works hard and takes her responsibilities
as an attorney very seriously. . . . Family and friends are very
important to her. I always know that if I ever needed help of any
kind, I could ask Jeanne for assistance without embarrassment and
knew if it was in her power to help me she would. I also know that

6

her support would be given freely and not offered with expectation of a return payment of any kind.

In contrast, today, Ms. Rawding writes, "The last time I saw Jeanne, she was so physically and emotionally distraught that I could hardly recognize her as the Jeanne that I know."

Joanne Rowzee, Ms. Rowzee's sister, separately writes, "When I speak to Jeanne now and since this incident, it's almost as if I am speaking to a shell of her former self. She has often been distraught and withdrawn.

One of Ms. Rowzee's relatively new friends of four years, Darrian L. Lohry, explains:

The court proceedings, and the situation that led to them, have had an absolutely devastating impact on Jeanne. She has been living in her own private hell, both during the events as they were occurring when she was overwhelmed and not able to find a way out of the situation, and since the court proceedings have been ongoing. Jeanne is severely depressed, as well as bipolar, and she is wracked with guilt and remorse over the poor decisions and bad judgments that have led to this point. Not a day goes by without her telling me how sorry she is for everything that has happened, and show she would do anything for an opportunity to conduct the events over again in a completely different and honest way. Her spirit has been absolutely destroyed by the situation, and it is all that she can do to function and be the mother, daughter, sister and friend that she wants to be. On many days she is paralyzed, and unable to function at all. On other days she is wracked with guilt and remorse, and goes about her daily activities but with great sorrow and preoccupation. I haven't heard her laugh

7

1   once in four years, and I don't believe that she has any true joy in life.
2   I don't think that that situation will change until this entire episode is
3   behind her, and she is able to move on with her life.

**IV.   SINCE MS. ROWZEE'S GUILTY PLEA SHE HAS ASSISTED**
**VICTIMS IN THEIR RESTITUTION EFFORTS**

By late 2006/early 2007, the PIPEs scheme had snowballed out of control and was tearing Ms. Rowzee apart, emotionally and psychologically, because she finally was able to see the harm she was causing to the victims. Ms. Rowzee decided that she could no longer be a participant. In February 2007, Ms. Rowzee executed 31 assignments of all her rights, title and interest in various Harvey/Halstead affiliated entities to PIPEs investors ("February 2007 Assignments"). Attached as "Exhibit C" to this memorandum are copies of the 31 February 2007 Assignments. The February 2007 Assignments have led to recoveries by the investors. We know this because Peter Pfund, during his collection efforts, repeatedly found that assets previously in the name of Ms. Rowzee had been transferred to victims.

Ms. Rowzee also cooperated with Peter Pfund, counsel for several of the PIPEs investors, to help his clients seek restitution. We request that the Court read Mr. Pfund's letter in which he acknowledges that his clients recovered half of their investment which would not have been possible without Ms. Rowzee's assistance. *See* Exhibit B.

In that regard, Ms. Rowzee turned over all documents and records in her possession relating to the PIPEs investors. In June 2009, Ms. Rowzee again executed assignments, 24 in total, of all her rights and interest in various Harvey/Halstead related entities to Mr. Pfund's client investors ("June 2009

8

Assignment"). Attached as "Exhibit D" to this memorandum are copies of the 24 June 2009 Assignments.

In total Ms. Rowzee spent 250 to 300 hours helping Mr. Pfund's clients recover assets in two lawsuits: (1) an action against PJ Elliott, Ms. Rowzee's former domestic partner; and (2) *House v. Harvey*, Orange County Superior Court Case number 07CC02779 – both of which resulted in confidential settlements. The Elliott case settled after a four day court trial, which Ms. Rowzee attended each day and testified for one day as a key witness.

Jeffrey Huston is one of three victims who have written letters to the Court on behalf of Jeanne Rowzee. Mr. Huston's sentiments are similar to those of Martin Williams and Dwight Esnard. Mr. Huston writes:

> I was approached by Mr. Halstead and he asked me to make an investment with him and with Jeanne Rowzee.
>
> My lawyer Peter Pfund and Ms. Rowzee have been working to recover my investment. Ms. Rowzee believes that what she is done is wrong and serious. *The loss of the money did cause me a great financial harm but she has recently been of assistance to my lawyer in recovering some of the money that I have lost. She has forfeited her own assets as restitution. I am aware that my lawyer would not have been able to recover any money without Jeanne Rowzee's help and assistance in two different cases of litigation. She is remorseful and is doing her best to pay me back.*
>
> *Please consider her cooperation and her efforts to pay me back in your sentencing her.*

*See* Exhibit B.

9

## V.  THE GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION IS INSUFFICIENT

The government recommends a sentence of 70 months.  The government believes the 70 month sentence is appropriate under section 3553(a) but also is based in part on a two-level reduction in her adjusted offense level pursuant to U.S.S.G. § 5K1.1.  Ms. Rowzee thanks the government for recognizing her cooperation.  Ms. Rowzee submits, however, that the Court should have provided her with a greater departure than the two levels recommended by the government.

As recognized in the government's memorandum, Ms. Rowzee's cooperation led to the guilty plea of James Halstead.  Ms. Rowzee also offered cooperation in another case, *United States v. Ted Staren*, which is being handled by Assistant U.S. Attorney Biesheuvel.  Counsel for Ms. Rowzee made a proffer to Ms. Biesheuvel on Ms. Rowzee's behalf.  Although Ms. Biesheuvel never met with Ms. Rowzee, the foregoing is demonstrative of Ms. Rowzee's cooperation with the government.

The government also acknowledges that the Guidelines consider other "substantial assistance" related factors and Ms. Rowzee submits that her cooperation and testifying on behalf of certain victims should be considered.

Accordingly, Ms. Rowzee requests a four-level departure for her substantial assistance.

## VI.  JEANNE ROWZEE HAS VOLUNTEERED HER TIME TO HELP OTHERS

Since June 2011, Ms. Rowzee has volunteered at Meals on Wheels for Age Well Senior Services.  As set forth by Chris Etcheverry, Meals on Wheels Manager, "She drives a regular Thursday route for us delivering meals to home bound seniors in Laguna Woods.  She has been an asset to our program during this

10

DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS IN SUPPORT THEREOF

time." *See* Exhibit E.  Prior to volunteering at Meals on Wheels, Ms. Rowzee had an affinity for animals and volunteered over the years to help them, including by financially supporting animal causes and volunteering her time at "no kill" animal shelters.

## VII.   THE VICTIMS CONTINUE TO SEARCH FOR ASSETS

While James Halstead spent investors' money like he was living the life of a rock star, Robert Harvey placed the vast amount of PIPEs investments into other investments as he directed.  As a result, to this day, there are available assets which are the subject of litigation by the victims.  Because there are different camps of victims (*i.e.*, groups of investors are represented by different counsel), the passion among the victims remains high given the prospect of additional recovery.  For example, Richard Macklin obtained an order from Judge Carter on May 9, 2011, which required the victims to disclose any recoveries relating to the PIPEs scheme. *See* Order (at "Exhibit F").  While we do not believe that those who have obtained a recovery have complied with the Order, these events are illustrative of continuing activity six years after the scheme ended.

Many of the investors have filed lawsuits against Ms. Rowzee personally. Ms. Rowzee has been the subject of much civil litigation since February 2007, as follows:

1)   *Foigelman v. Rowzee*, Orange County Superior Court, case number 07CC02631;

2)   *House v. Rowzee*, Orange County Superior Court, case number 07CC02779;

3)   *Lee v. Rowzee*, Orange County Superior Court, case number 07CC3470;

4)   *Millenia Mortgage v. Rowzee*, Orange County Superior Court, case

11

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS
IN SUPPORT THEREOF**

1   number 07CC3919;

2        5)    *Esnard v. Rowzee*, Orange County Superior Court, case number

3   07CC4165;

4        6)    *Mack University, et. al. v. Halstead, et. al.*, United States District

5   Court, Southern District of California, case number SA-CV-07-0393;

6        7)    *Pierce v. Rowzee*, United States District Court, Central District of

7   California, case number SA-CV-07-0641;

8        8)    *Burnett v. Rowzee*, United States District Court, Central District of

9   California, case number SA-CV-07-0641;

10       9)    *SEC v. Rowzee, et al.*, United States District Court, Central District of

11   California, case number SA-CV-08-1025.

12       Most recently, Ms. Rowzee submitted to a Debtor's Examination by Richard

13   Macklin and made all of her records available to him.  It is anticipated that Mr.

14   Macklin will address the Court at sentencing and he has every right to share with

15   the Court the fact that he is a victim of the PIPEs scheme.  Unfortunately, in

16   connection with the civil litigation and a desire to punish Ms. Rowzee as much as

17   possible, the victims have alleged that Ms. Rowzee has off shore accounts and is

18   holding proceeds of the PIPEs scheme.  This allegation is unproven and untrue.

19   Counsel for Ms. Rowzee highlights it here in the memorandum so it does not

20   become a distraction at sentencing.

21       Indeed, if Ms. Rowzee was sitting on substantial assets, she would not have

22   sought to postpone sentencing to work with the victims' counsel to retrieve assets

23   from third parties.  Rather, she would have swiftly served her sentence to move on

24   with her life.  The bottom line is that Ms. Rowzee is penniless and but for the

25   support of her family and mental disability payments, she would be on the street.

26

27

28

12

---

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS
IN SUPPORT THEREOF**

## VIII.  MS. ROWZEE RESIGNED FROM THE BAR

The Court should be aware that Ms. Rowzee resigned from the State Bar of California on March 26, 2010.  Because of the pending criminal proceeding, the State Bar also commenced an action against Ms. Rowzee which would not have been resolved until after sentencing.  On April 29, 2011, Ms. Rowzee, however, stipulated to entry of judgment, thereby eliminating the need for further litigation.

Obviously, Ms. Rowzee's loss of her law license is punitive in and of itself. It also means that after Ms. Rowzee completes her custodial sentence, she will not be able to reoffend.  Also relevant, however, is the fact that Ms. Rowzee will not be able to earn income as a lawyer and will need to begin anew.

## IX.  THE ADVISORY SENTENCING GUIDELINES AND FURTHER RESPONSE TO PRESENTENCE REPORT

Ms. Rowzee has accepted responsibility for participating in the PIPEs scheme which resulted in losses to many victims.  Investors were offered high rates of return for their investment in public companies which allegedly required short term funding while awaiting public investment.  Ms. Rowzee's role in the scheme, however, is very different than as characterized by the Probation Office.  ***The government agrees with Ms. Rowzee that Ms. Rowzee did not direct the conduct of either James Halstead or Robert Harvey.***[1]

### A.  The Advisory Sentencing Guidelines

The advisory guidelines are only one of numerous factors for the Court to consider under Section 3553(a) and the facts and circumstances above, including Ms. Rowzee's mental condition, her cooperation and restitution efforts and the collateral consequences she has suffered (*e.g.*, anguish, loss of all property,

---

[1] Ms. Rowzee timely objected to the Presentence Report, filed November 16, 2010. Docket #87.

13

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS IN SUPPORT THEREOF**

disbarment), warrant a variance from the advisory guidelines.  As set forth above, Ms. Rowzee believes a sentence of 36 months is appropriate.

**B.**     **The Court Should Find Loss Between $7 Million and $20 Million As Stipulated To by the Parties, a 20 Level Increase**

The Probation Office recommends a 22 Level Increase in loss based on its conclusion that the loss is $25,544,811.  The parties, however, stipulated to a loss greater than $7 million and less than $20 million and Ms. Rowzee requests that the Court follow the parties' stipulation.  The Probation Office apparently is relying on a "victim list" which includes self-reported amounts from the investors.  Most importantly, the Probation Office acknowledges that this list is not accurate but an attempt to compile an accurate list.  PSR. ¶ 20.  Of significance:

(a)     The PSR identifies the fact that Equity Capital received $6,565,210 but invested only $236,000.  PSR ¶ 18.  The Probation Office acknowledges that Equity Capital was a group of investors, yet the Probation Office does not reduce the loss by the $6,565,210.  This is error.

According to Peter Pfund, who has been searching for recoverable assets from the PIPEs scheme for several years, Equity Capital is a defunct company which was used by Jamie Barker, an associate of James Halstead who ran his own syndicate of numerous investors.  By way of example, among the investors on the "victim list" who were associated with the Jamie Barker group are Sheri Barker, who is Jamie Barker's wife, Canyon Lake Auto Care, Graham Eves, Tom Hazen, John Leah and Temecula Radiator and Oil Repair.

Peter Pfund personally spoke with John Leach, who invested $1,095,000, and Tom Hazen, who invested $200,000, and both told him that they were repaid their investments.  In fact, they told him that everyone who invested through Jamie Barker was repaid their investment.

14

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS IN SUPPORT THEREOF**

1      ***If the amount of $6,801,210 received by Equity Capital is excluded***

2      ***because it was in fact repayment to the Jamie Barker syndicate, the loss***

3      ***immediately falls below $20 million.***

4           (b)    The PSR acknowledges that the amounts on the spreadsheet are ***not***

5      ***consistent*** with the victims' statements of loss as reported to the FBI.  PSR ¶ 19.

6      Given that Ms. Rowzee pleaded guilty and does not have copies of the memoranda

7      of interview which would reflect these inconsistencies, the spreadsheet should not

8      be used as a basis to determine loss when even the Probation Office has

9      acknowledged inconsistencies.

10

11           (c)    Further, the Probation Office included higher loss amounts than those

12      reported by the FBI if a victim provided information that their loss amount was

13      higher.  It is entirely plausible that victims provided proof of their loss but did not

14      provide proof of returns on their investment.  Perhaps they considered those

15      payments as "interest payments" but the law is settled that any payments received

16      to the extent of the principal offset the principal investment.  U.S.S.G. § 2B1.1,

17      Application Note 3(D) (Interest is excluded from Loss).

18           (d)    To further illustrate the unreliability of the Probation Office's

19      calculation, we submit the following:

20               (1)    George Kenney is listed as a victim, yet he is the managing

21      member of Shepherd Ventures II, L.P., one of the very entities into which

22      Harvey placed investor funds.  Attached as "Exhibit G" is the Institutional

23      Investors Subscription Agreement ***signed by Robert Harvey and George***

24      ***Kenney***.  It is preposterous for Mr. Kenney to be considered a "victim" when

25      he is the controlling member of an entity which received investor funds.  In

26      fact, Mr. Kenney is still listed as the Agent for Service of Process for

27      Shepherd Ventures II according to the Secretary of State.  *See* Exhibit H.

28

15

---

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS**
**IN SUPPORT THEREOF**

(2)   Chris Day, who is reported as having lost $100,000, is an attorney who directly invested with James Halstead.

(3)   Sergio Luna is James Halstead's butler and invested $35,000 but Ms. Rowzee had nothing to do with Mr. Luna.

(e)   The Court also should consider the fact that over $24 million was directly deposited into James Halstead's account and over $6 million was directly deposited into Robert Harvey's account. The point is that Halstead and Harvey not only were acting in concert with Jeanne Rowzee and depositing funds into her operating account, they also were acting independently and directing funds into their own accounts without Ms. Rowzee's knowledge. Ms. Rowzee has no idea as to the identity of a vast number of the victims and speculative amounts should not be attributed to her.

(f)   Finally, James Halstead and Robert Harvey both conducted their own insurance schemes, separate and independent of the PIPEs scheme with Ms. Rowzee; events which are totally outside the factual basis in Ms. Rowzee's plea agreement. *United States v. Berger*, 587 F.3d 1038, 1043 (9th Cir. 2009) ("In *Hicks*, we stated that "[t]he Guidelines' 'relevant conduct' provision requires a defendant's sentence to be based on 'all harm that resulted from the acts or omissions' of the defendant." *Id.* (quoting U.S.S.G. § 1B1.3(a)(3) (1995)); *id.* at 1048–49 (holding that *government must show both "but-for" and "proximate" causation in establishing loss*)) (emphasis added). Again, a total of $30 million went into Halstead and Harvey's accounts and there is no proof that all of those funds were related solely to the PIPEs investments.

The bottom line is that the spreadsheet and victim list both are unreliable, do not reflect a reasonable estimate of loss, and should not be relied on by the Court given the magnitude of its impact on Ms. Rowzee's sentencing. In fact, a two-

16

level upward adjusted would amount to an additional 17 months in custody.  If the Court does not agree with the parties' stipulation of loss between $7 and $20 million, Ms. Rowzee requests that the Court continue sentencing, schedule an evidentiary hearing and have the Probation Office disclose to Ms. Rowzee in advance the documentation supporting its calculation.  There is no doubt that this inquiry will confirm the accuracy of the parties' stipulated loss amount.

### C.   Ms. Rowzee and the Government Agree that Rowzee Was Neither a Leader Nor Organizer

The Probation Office recommends a four level increase in Ms. Rowzee's Offense Level, which includes a two level increase based on Ms. Rowzee's purported role "the person responsible for organizing the PIPEs investment scheme and recruited Halstead and Harvey to solicit investors" and because Ms. Rowzee allegedly "paid Halstead and Harvey a portion of the investment amounts in exchange for their recruit of investors."  PSR¶ 33.  This is not true.

Ms. Rowzee was neither a leader nor organizer of the PIPEs scheme.  She did not hatch the PIPEs scheme, she did not solicit investors, and substantially all of the money either went to Halstead and Harvey, or was invested or returned to investors.

The fact of the matter is that Halstead formulated the PIPEs scheme and began using Jeanne Rowzee, because she was a lawyer, as support for the legitimacy of the PIPEs investments.  Ms. Rowzee is here because she went along with the scheme.  Moreover, while a portion of the PIPEs investments was deposited into Ms. Rowzee's bank account, it is undisputed that substantially all of that money immediately was transferred to Halstead and Harvey.

Significantly, the victims were solicited by James Halstead or Robert Harvey or various syndicates run by people associated with Halstead and Harvey without

17

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS IN SUPPORT THEREOF**

any input from Ms. Rowzee. The victims can roughly be grouped into two categories. First, James Halstead and Robert Harvey sold insurance and had established client lists which they used to solicit investors. Second, James Halstead and Robert Harvey enrolled others in their scheme to solicit additional investors. This was done without Ms. Rowzee's knowledge. In fact, there are dozens of names on the list of victims of which she has no knowledge.

Specifically, Ernie Burnett, Jamie Barker, Robert Farmer (aka LDS Athletes), Steve Lee (aka Corbin & Co.) each formed syndicates where they solicited and obtained money from third parties and paid themselves substantial commissions from the solicited proceeds. Ironically, all of these individuals are identified in the PSR as victims despite their independent criminal liability and the fact that they profited handsomely from their own participation.

Finally, Ms. Rowzee withdrew from the scheme. While Ms. Rowzee's withdrawal obviously should have happened earlier, it was Ms. Rowzee who put a stop to the scheme by refusing to participate further (*i.e.*, by refusing to allow her name and bank account to be used).

It was at this point that Halstead and Harvey, in concert, turned on Ms. Rowzee and sought to blame her for the PIPEs scheme. Halstead and Harvey went so far as to align themselves with the very investors they defrauded and formed a company called PIPES Investors, LLC. Ms. Rowzee assigned all of her assets to this entity. *See* Exhibit D.

The bottom line is that Ms. Rowzee had no aggravating role in the offense and it would be error to increase her offense level accordingly.

18

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS IN SUPPORT THEREOF**

**D.    Ms. Rowzee Should Not Receive a Two Level Increase for Abuse of Position of Trust**

The Probation Office and the government recommend an increase in Ms. Rowzee's offense level of two levels for abuse of a position of trust. PSR ¶ 34. This enhancement is inappropriate for several reasons. First, none of the victims were clients of Ms. Rowzee's. Second, it was Halstead who touted Ms. Rowzee as a securities expert. Third, it also was Halstead and Harvey who directed investors to deposit funds into Ms. Rowzee's operating (not client trust) account. Fourth, the Probation Office cites Ms. Rowzee's alleged relationship with a brokerage firm in Colorado but the facts surrounding this relationship have nothing to do with abuse of a position of trust.

## X.    FINE AND RESTITUTION

Ms. Rowzee has worked hard toward providing restitution to the victims and, as set forth above, has assigned everything she has. Ms. Rowzee does not have any additional assets.

**A.    Fine:** The Probation Office recommends that the Court not impose any fine because of Ms. Rowzee's financial inability to pay. Ms. Rowzee agrees.

**B.    Restitution:** Ms. Rowzee agrees to entry of a restitution order. Ms. Rowzee simply requests:

(1)    That the Court waive interest on the restitution amount;

(2)    That Halstead be jointly and severally liable with Ms. Rowzee; and

(3)    That the restitution amount be reduced in the event it is determined that the victims did not invest the amounts represented to the Probation Office and by any payments received by the victims from James Halstead, Robert Harvey,

19

DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS
IN SUPPORT THEREOF

1    Ms. Rowzee or from a third party possessing assets for the
2    benefit of any of these individuals.

3  **XI.   CONCLUSION**

4         Ms. Rowzee recognizes that the Court routinely imposes sentence.  Before
5  the Court, however, is a mother whose identity and purpose in life is truly tied to
6  that of her children.  While any custodial sentence is punitive, every day of
7  imprisonment (away from her children) will be tormenting for Jeanne Rowzee.
8  Given section 3553(a)'s mandate to consider the characteristics of the defendant,
9  Ms. Rowzee's deep connection to her children should be considered in imposing a
10 sentence below the guidelines range after accounting for her cooperation.

11        In the event the Court imposes a custodial sentence, Ms. Rowzee
12 respectfully requests the following:

13       (a)    That the Court recommend that Ms. Rowzee be designated for
14              placement at the Victorville camp for women so she can be close to
15              her children;

16       (b)    That she be allowed to self-report, as recommended by the Probation
17              Office.  *See* Probation Office Recommendation at p. 3.  Ms. Rowzee
18              requests reporting within 60 days of entry of judgment; and

19 //
20 //

21                              20

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS
IN SUPPORT THEREOF**

1        (c)    That she be allowed to travel to Maryland from June 28, 2012, to July

2    15, 2012, to say goodbye to her parents along with her children prior to serving her

3    term of imprisonment.  Charles Rowzee is turning 89 and Doris Rowzee is 88.

4                                       Respectfully submitted,

5

6    Dated:  May 11, 2012                LAW OFFICE OF
                                      STEVEN M. GOLDSOBEL

7

8                                          By: _____

9                                              STEVEN M. GOLDSOBEL
                                      Attorney for Defendant

10                                         Jeanne Rowzee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT JEANNE ROWZEE'S SENTENCING MEMORANDUM AND EXHIBITS
IN SUPPORT THEREOF**